UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CURT L. ROBINSON,

    Plaintiff,

v.

Case No. 1:17-CV-440

Hon. Robert J. Jonker

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

**REPORT AND RECOMMENDATION**

    Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied his claim for disability insurance benefits (DIB) and supplement security income (SSI).

    Plaintiff alleged a disability onset date of January 24, 2013. PageID.224. Plaintiff identified his disabling conditions as: carpal tunnel in both hands with surgery; right shoulder injury and surgery; neck arthritis; and high blood pressure. PageID.228. Prior to applying for DIB and SSI, plaintiff earned a GED, completed a course to be a nurse's aide, and had past employment as an industrial truck operator, warehouse worker, grinder operator, and press operator. PageID.55, 229. An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on April 21, 2016. PageID.41-57.

    **I.**    **LEGAL STANDARD**

    This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42

U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe

impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, ALJ Condon found that plaintiff had not engaged in substantial gainful activity since the alleged onset

date of January 24, 2013, and met the insured status requirements of the Social Security Act through December 31, 2016. PageID.43.

At the second step, the ALJ found that plaintiff had severe impairments of: left triangular fibro cartilage complex tear and partial scapholunate ligament tear status-post arthroscopy and debridement; right shoulder rotator cuff tear and acromioclavicular arthritis status-post arthroscopy; 1ight-sided epicondylitis; osteoarthritis of the right hand; bilateral carpal tunnel syndrome; bilateral ulnar neuropathy; mild cervical degenerative disc disease; partial tear of the left Achilles tendon; and obesity. PageID.44. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.45.

The ALJ decided at the fourth step that:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is limited to occasional climbing and balancing, occasional overhead reaching on the right, and frequent handling and fingering bilaterally. He is going to be limited to simple work with no fast-paced work.

PageID.46. The ALJ also found that plaintiff is unable to perform any past relevant work. PageID.55.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at the light exertional level in the national economy. PageID.55-56. Specifically, the ALJ found that plaintiff could perform the requirements of light and unskilled occupations in the State of Michigan as follows: mail clerk (2,000 jobs); merchandise marker (50,000 jobs), and warehouse checker (1,000 jobs). PageID.56. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from January 24, 2013 (the alleged onset date) through April 21, 2016 (the date of the decision). PageID.56-57.

### III. DISCUSSION

Plaintiff set forth three issues on appeal[1]:

**A. ALJ Prothro's residual functional capacity (RFC) finding lacks medical support.**

**B. ALJ Prothro violated the treating physician rule**

The Court will address Issues A and B together. RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. §§ 404.1545 and 416.945. It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c).

Plaintiff contests the ALJ's determination that he can perform light work (i.e., "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," *see* 20 C.F.R §§ 404.1567(b) and 416.967(b)), stating that the only medical evidence in the record indicated that he cannot lift over 5 pounds and cannot work above shoulder level. This restriction appears in a "Transitional work abilities form" from Orthopaedic Associates of Muskegon and West Michigan Spine Center dated August 21, 2014. The medical provider issued plaintiff the following work restriction, "NO LIFTING OVER 5LBS, NO ABOVE SHOULDER WORK, NO REACHING MORE THAN 18UIN [sic] AWAY FROM BODY WITH RIGHT ARM AND ELBOW TO REMAIN AT SIDE." PageID.406. Plaintiff states that the ALJ rejected this evidence by finding that plaintiff could perform light work (i.e., lift up to 20 pounds) and occasionally reach overhead. PageID.46.

---

[1] The Court notes that plaintiff filed three briefs in this appeal. The Court is addressing the issues and arguments raised in the third brief, i.e., plaintiff's (second) corrected brief on appeal (ECF No. 18).

> The ALJ addressed this opinion in pertinent part:
>
> As for the opinion evidence, in May 2014, Jeffrey Recknagel, M.D., a treating physician, recommended the claimant have right-sided limitations of lifting to no more than five pounds, performing no above shoulder work, and reaching no greater than 18 inches from his body (11F/28). In August 2014, Dr. Recknagel provided the claimant with permanent work restrictions of no lifting over five pounds, no above shoulder work, and no reaching more than 18 inches away from the body with the right arm and elbow to remain at his side (8F/2 and 33F/1). In his treatment records, he stated the claimant has permanent restrictions of no lifting greater than five pounds, no above shoulder work, and no reaching greater than 18 inches from his body with his right hand (11F/29).
>
> Pursuant to Social Security Ruling 96-02p, a treating source's medical opinion may be entitled to controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the case record. Dr. Recknagel was a treating physician. However, his assessment is not consistent with the weight of the objective medical examination findings, diagnostic testing, and the longitudinal treatment record, which demonstrates relatively conservative treatment since these restrictions were provided (1F-34F). Additionally, the medical evidence of record demonstrates some improvement since these restrictions were made. For example, during an evaluation in August 2015, it was reported the claimant had previously been prescribed Neurontin, and that the claimant noted he had improvement in his right shoulder pain (22F/15). Accordingly, the undersigned gives little weight to these restrictions.

PageID.52-53.

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2)

("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Based on this record, the ALJ did not give good reasons for rejecting Dr. Recknagel's 5-pound lifting restriction. First, the ALJ's blanket statement that this restriction is not supported by the "relatively conservative treatment" reflected in over 500 pages of medical records (Exhibits 1F-34F, PageID.293-831), does not address the specific question of whether Dr. Recknagel's August 21, 2014 lifting restriction was supported by medically acceptable clinical and laboratory diagnostic techniques, and not inconsistent with the other substantial evidence in the case record. *See Gayheart*, 710 F.3d at 375. The fact that claimant reported improvement in his right shoulder pain in August 2015 does not undercut or invalidate Dr. Recknagel's conclusion

that plaintiff could only lift 5 pounds back in August 2014. Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate Dr. Recknagel's 5-pound permanent lifting restriction.

### C. ALJ Prothro gave inadequate reasons for rejecting plaintiff's complaints, i.e., plaintiff's reported symptoms and limitations

Plaintiff contends that the ALJ did not properly evaluate his credibility with respect to his reported symptoms and limitations. An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

The ALJ performed an extensive review of plaintiff's credibility. Plaintiff contests six aspects of the decision. As an initial matter, the ALJ limited plaintiff to simple work and no fast-paced work due to his pain and functional limitations:

> The undersigned finds the claimant has been subject to a degree of pain and functional limitations, and the residual functional capacity was reduced to accommodate these limitations. For instance, exertional and postural restrictions were incorporated into the residual functional capacity to accommodate the claimant's alleged pain, as well as his body habitus. Manipulative restrictions were included due to the claimant's left triangular fibro cartilage complex tear and partial scapholunate ligament tear status-post arthroscopy and debridement; right shoulder rotator cuff tear and acromioclavicular arthritis status-post arthroscopy; right-sided epicondylitis; osteoarthritis of the right hand; bilateral carpal tunnel syndrome; bilateral ulnar neuropathy; and mild cervical degenerative disc disease. Due to the claimant's subjective complaints of medication side effects and the effects of pain on concentration, the claimant has been limited to simple work with no fast-paced work.

PageID.51.

The ALJ found that plaintiff's allegation of suffering from a disabling impairment was not consistent with the medical record:

> However, the claimant's allegations that he is incapable of all work activity are not well supported by the record as a whole. As demonstrated above, the objective medical evidence of record shows the extent of the claimant's alleged limitations is not consistent with the objective medical evidence. In August 2013, it was reported he appeared histrionic (6F/5). During an orthopedic evaluation in January 2014, it was noted the claimant grimaced before he was even touched (6F/2). Although the claimant had surgery on his left wrist and right shoulder in 2013, the medical evidence of record shows the claimant has otherwise had relatively conservative recent treatment. The medical evidence suggests some improvement with treatment despite the claimant's testimony. For example, in 2013, the record shows the claimant had some improvement in range of motion with physical and occupational therapy (3F and 25F-29F). In April 2013, it was assessed the claimant was doing reasonably well with regard to his left wrist injury and postsurgical progress ( 4F/15). In February 2014, the claimant reported that his right shoulder pain was relieved by medication and rest, noting he was on Norco (7F/5). During an evaluation in August 2015, it was reported the claimant had previously been prescribed Neurontin, and the claimant noted he had improvement in his right shoulder pain (22F/15). He was advised to continue taking Neurontin until it was gone and that if his pain continued, the Neurontin could be restarted (22F/ 16). The claimant subsequently reported his left wrist pain was better with

>ice and medication (24F/5). In December 2015, the claimant noted he had improvement with use of an immobilizer (34F/3-5).

PageID.51.

### 1. The ALJ improperly considered a physician's statement that plaintiff was histrionic

On August 14, 2013, plaintiff went to the emergency room for a pain injection. He complained of pain as his treating physician took him "through passive range of motion," and noted that plaintiff was "fairly histrionic on examination." PageID.372.[2] An ALJ can properly conclude that a claimant is not credible based on histrionic behavior. *See, e.g., Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002) (ALJ could conclude that a claimant was not credible based on her demeanor at the administrative hearing and finding that "she seemed to engage in considerable histrionic exaggeration"). *See also, Hinely v. Astrue*, No. CIV.A.1:07CV64, 2008 WL 4467156 at *33 (N.D.W. Va. Sept. 30, 2008) (ALJ could properly discount the claimant's credibility based, in part, on a record "replete with histrionics and over exaggeration"). Accordingly, plaintiff's claim of error should be denied.

### 2. The ALJ improperly relied on plaintiff's conservative course of treatment since the 2013 surgery

Next, the ALJ's opinion set forth a detailed discussion of plaintiff's medical history, outlining his condition both before and after the 2013 surgery. PageID.46-51. The ALJ fairly characterized plaintiff's post-surgical treatment as "relatively conservative." Plaintiff contends that his history of conservative treatment since the 2013 surgery is not a basis to discredit his subjective complaints. The Court disagrees. An ALJ may discount a claimant's credibility if the claimant received only a mild or conservative course of treatment for an alleged disabling

---

[2] "Histrionic" has been defined as "pertaining to or characterized by histrionism." *Dorlands Illustrated Medical Dictionary* (28th Ed.) at p. 770. In turn "histrionism" is defined as "dramatic, attention-seeking, excitable behavior." *Id.*

10

impairment. *See Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir. 1990) (a claimant's use of only mild medications undercuts complaints of disabling pain). *See also, Conger v. Astrue*, 453 Fed. Appx. 821, 829 (10th Cir. 2011) (where the claimant received "essentially routine and conservative medical care," such treatment "was not indicative of disabling impairments"); *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"); *McKenzie v. Commissioner*, No. 99-3400, 2000 WL 687680 at * 4 (6th Cir. May 19, 2000) ("[p]laintiff's complaints of disabling pain are undermined by his non aggressive treatment"); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir.1998) (a claim of disabling pain lacked credibility where the claimant relied on a conservative course of treatment). Accordingly, this claim of error is denied.

### 3. The ALJ improperly relied on plaintiff's improvement

Next, plaintiff contends that the ALJ improperly considered his improvement in discounting his credibility. As discussed, the ALJ observed that the medical evidence suggested some improvement with treatment between April 2013 and December 2015, despite the claimant's testimony that he suffered from a disabling impairment. The Court views these statements as pointing out contradictions between the medical records and plaintiff's testimony. *See Walters*, 127 F.3d at 531. The ALJ cited substantial evidence to support this determination. While plaintiff invites the Court to re-examine plaintiff's credibility, it is not for this Court to resolve conflicts in the evidence or decide questions of credibility. *See Brainard*, 889 F.2d at 681; *Sullenger*, 255 Fed. Appx. at 995. Accordingly, plaintiff's claims of error should be denied.

### 4. Variable complaints of fatigue

The ALJ also addressed plaintiff's claims of fatigue as follows:

> At the hearing, the claimant asserted he had significant fatigue, indicating it was in part due to medication side effects. In February 2015, the claimant reported having fatigue (11F/3). In May 2015, he stated he had been experiencing fatigue for three weeks (13F/11). However, the record shows the claimant otherwise denied having fatigue, including during subsequent evaluations (7F/5, 10F/1, 10F/4, 10F/6, 11F/30, 13F/7, 24F/3, 24F/5-6, and 24F/14). Therefore, the undersigned finds the medical evidence of record does not find greater limitations than have been assessed arising from the claimant's subjective symptom of fatigue.

PageID.52.

The ALJ noted that at some points in time, plaintiff reported fatigue, and that at other points in time, plaintiff denied fatigue. Plaintiff contends that "absent denying fatigue *at the same time* that one reported fatigue, this is not the inconsistency the regulations require before claimant complaints may be rejected." Plaintiff's Brief at PageID.901. While plaintiff relies on SSR 96-7p, it appears that this SSR had been superseded by SSR 16-3p when the ALJ issued his decision on April 21, 2016.[3] Nevertheless, SSR 16-3p includes similar language regarding inconsistencies in statements as follows:

> However, inconsistencies in an individual's statements made at varying times does not necessarily mean they are inaccurate. Symptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time. This may explain why an individual's statements vary when describing the intensity, persistence, or functional effects of symptoms.

SSR 16-3p.

In this instance, the ALJ did not establish that plaintiff made contradictory statements regarding fatigue. Rather, the decision lists documents in which plaintiff denied having fatigue without any further explanation as to the date or circumstances of those denials. The

---

[3] SSR 16-3p, footnote 27, states:

"Our adjudicators will apply this ruling when we make determinations and decisions on or after March 28, 2016. When a Federal court reviews our final decision in a claim, we expect the court will review the final decision using the rules that were in effect at the time we issued the decision under review. If a court finds reversible error and remands a case for further administrative proceedings after March 28, 2016, the applicable date of this ruling, we will apply this ruling to the entire period at issue in the decision we make after the court's remand. Our regulations on evaluating symptoms are unchanged."

Commissioner must provide a statement of evidence and reasons on which the decision is based. *See* 42 U.S.C. § 405(b)(1). While it is unnecessary for the ALJ to address every piece of medical evidence, *see Heston*, 245 F.3d at 534-35, an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). Here, the Court cannot trace the path of the ALJ's reasoning. While it appears that the intensity of plaintiff's fatigue varied over time, the ALJ did not provide a sufficient explanation for rejecting all of claimant's statements regarding fatigue. Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should determine whether plaintiff's statements regarding fatigue contradict the medical evidence.

### 5. Unemployment compensation

The ALJ found that plaintiff's receipt of unemployment compensation in the fourth quarter of 2013 (October, November and December) brings into question plaintiff's allegation that he has been totally disabled since January 24, 2013:

> The claimant received some unemployment compensation in the fourth quarter of 2013 (4D/1). In order to qualify for unemployment compensation benefits, applicants typically must affirm they are capable of working. Thus, the claimant apparently claimed an ability to work when applying for another form of government benefits, while currently alleging an inability to work during the same period. Although the receipt of unemployment benefits does not preclude a finding of disability, it brings into question the supportability of the extent of the claimant's alleged functional limitations.

PageID.52.

The ALJ could properly consider plaintiff's application for and receipt of unemployment benefits as an indication that he had the capacity to work. "This district, as well as the Sixth Circuit, has recognized the apparent contradiction between a claimant seeking disability benefits while simultaneously receiving unemployment compensation." *Davis v. Commissioner*

*of Social Security,* No. 1:15-CV-0652, 2016 WL 3769406 at *5 (W.D. Mich. July 15, 2016). *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir. 2004) ("Applications for unemployment and disability benefits are inherently inconsistent."). The receipt of unemployment benefits is only one of many factors to be considered in determining whether a claimant is disabled. *See Davis*, 2016 WL 3769406 at *5. Here, the ALJ did not rely on the receipt of unemployment benefits as precluding receipt of benefits. Rather, he properly considered it as one factor in evaluating plaintiff's credibility. Accordingly, plaintiff's claim of error should be denied.

### 6. Activities of daily living (ADLs)

Finally, the ALJ found that plaintiff's limited ADLs were not supported by the record:

> The undersigned also considered the claimant's daily activities. The claimant has alleged difficulty attending to his personal care (2E/9, 4E/2, and 9E/2; *See also* 6F/7 and 27F/9). In March 2014, he asserted he did not perform household chores or past hobbies (4E/3-5). In September 2014, he stated he had difficulty handling money due to problems writing, with the record showing he also asserted he did not prepare meals or perform past hobbies (9E/2-5). He noted he did not drive, but attributed this to the lack of a license (9E/4 and Testimony). At the hearing, the claimant alleged his girlfriend helps him shower. He asserted he is unable to cook except for using a microwave and that his girlfriend and daughter do the yard work. However, in March 2014, the claimant noted he could shower, drive, prepare simple foods, shop in stores, and handle money (4E/2-5; *See also* 9E/3-4). Although the claimant has described daily activities that are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be verified objectively with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons. Overall, the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision. Weighing all relevant factors, the undersigned concludes that the claimant's subjective complaints do not warrant any additional limitations beyond those established in the residual functional capacity outlined in this decision.

PageID.52.

Plaintiff objects to the ALJ's conclusion that plaintiff's ADLs did not support his disability claim because those ADLs could not be objectively verified and were limited for reasons unrelated to plaintiff's alleged impairments. Plaintiff does not cite authority or present any meaningful argument to support his claim. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Accordingly, the Court construes this issue as waived.

### IV. RECOMMENDATION

For the reasons discussed, I respectfully recommend that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate Dr. Recknagel's 5-pound permanent lifting restriction and determine whether plaintiff's statements regarding fatigue contradict the medical evidence.


Dated: June 19, 2018     /s/ Ray Kent
                          United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).